## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CHARLES R. B.,**

      **Plaintiff,**

      **v.**                              **Case No. 20-CV-2453-JAR**

**KILOLO KIJAKAZI, Commissioner of Social
Security,**

      **Defendant.**

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant

Commissioner of Social Security denying Plaintiff's application for disability insurance benefits

under Title II of the Social Security Act.  Plaintiff asserts that the Commissioner's decision is not

supported by substantial evidence.  Having reviewed the record, and as described below, the

Court reverses the order of the Commissioner and remands the case.

**I.      Procedural History**

On March 27, 2018, Plaintiff protectively applied for a period of disability and disability

insurance benefits.  In his application, he alleged a disability onset date of January 2016.  He

later amended his disability date to May 1, 2016.  Plaintiff's application was denied initially and

upon reconsideration.  He then asked for a hearing before an ALJ.

After a hearing on May 22, 2019, and the submission of an additional psychological

consultative examination, the ALJ issued a written decision on August 20, 2019, finding that

Plaintiff was not disabled.   Given the unfavorable result, Plaintiff requested reconsideration of

the ALJ's decision from the Appeals Council.  Plaintiff's request for review was denied on July

15, 2020.  Accordingly, the ALJ's August 2019 decision became the final decision of the Commissioner.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas. He seeks reversal of the ALJ's decision and the grant of those benefits.  Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[1]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[3]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[4]

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .[5]

---

[1] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

[2] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[3] *Id.*

[4] 42 U.S.C. §§ 423(d)(2)(A), 416(i)(1)(a).

[5] *Id*. § 423(d)(2)(A).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[6]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[7]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability, (2) whether the claimant has a severe impairment, or combination of severe impairments, and (3) whether the severity of those impairments meets or equals a designated list of impairments.[8]  "If the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's RFC, which is [the claimant's] ability to do physical and mental work activities on a sustained basis despite limitations from [his] impairments."[9]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[10]  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[11]  The burden then shifts to the

---

[6] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[7] *Barkley v. Astrue*, Case No. 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. Jul. 28, 2010).

[8] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (first quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); then quoting *Williams v. Brown*, 844 F.2d 748, 751 (10th Cir. 1988)); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[9] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[10] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[11] *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005)).

Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[12]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. He determined at step two that Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, early onset dementia, and an unspecified neurocognitive disorder. At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of a listed impairment in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. Continuing, he determined that Plaintiff had the RFC to

> perform a full range of work at all exertional levels. He is able to carry out detailed, but uninvolved, instructions in the performance of simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions with few, if any, work place changes. He can occasionally interact with the public and frequently interact with coworkers and supervisors.[13]

The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. After considering Plaintiff's age, education, work experience, and RFC, he determined at step five that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Thus, the ALJ concluded that Plaintiff had not been under a disability from May 1, 2016, through the date of his decision.

## IV.    Discussion

Plaintiff alleges that the ALJ's RFC is not supported by substantial evidence. Specifically, Plaintiff takes issue with the ALJ's findings as to the state agency psychologists (Drs. Skolnick and Becker), Plaintiff's treating physician (Dr. Samuelson), Plaintiff's specialized

---

[12] *Id*. (quoting *Hackett*, 395 F.3d at 1171).

[13] Doc. 8-1 at 35.

clinical social worker (Snyder), and the consultative examiner (Dr. Neufeld). Plaintiff contends that all the physicians' opinions supported a disability finding, but the ALJ substituted his own expertise over that of the physicians of record. The Court will address each of Plaintiff's contentions.

Drs. Skolnick and Becker, the state agency psychologists, each reviewed Plaintiff's medical records and determined that he had moderate work-related mental limitations but could understand, remember, and carry out simple work instructions; could maintain attendance and sustain routine; could interact adequately with peers and supervisors; and could adapt to most usual changes in a common work setting. The ALJ found their opinions to be persuasive, noting that they were consistent with Plaintiff's limited processing speed and wide range of daily living activities.

Plaintiff asserts that the ALJ erred in finding Dr. Skolnick's and Dr. Becker's medical findings persuasive but omitting some of their findings in the RFC. Specifically, Drs. Skolnick and Becker found that Plaintiff had moderate limitations in performing detailed instructions and he was limited to performing only simple work instructions. The ALJ, however, found in Plaintiff's RFC that Plaintiff could "carry out detailed, but uninvolved, instructions."[14] Defendant admits that the ALJ committed error when he did not incorporate the doctors' limitation of simple work instructions in the RFC. Defendant also agrees that had the ALJ included this limitation in the RFC, there would only be one of the three unskilled occupations available to Plaintiff because the other two occupations require the ability to follow detailed instructions. Accordingly, Defendant concedes that the ALJ erred in finding Drs. Skolnick's and Becker's opinions persuasive but not including their limitation of simple work instructions in

---

[14] *Id.*

Plaintiff's RFC. This error resulted in the inclusion of many more jobs for which Plaintiff would not be able to do.

Defendant, however, contends that this error is harmless and not reversible. Defendant asserts that the remaining occupation represents 100,000 jobs in the national economy and thus this occupation alone satisfies the Commissioner's burden of showing that there are a significant number of jobs in the national economy. Plaintiff disagrees and argues that the Court cannot make the determination that the single job, in the absence of the other two jobs, exists in significant numbers because the ALJ did not make this factual finding in the first place and thus the Court cannot do so.

Generally, the Court should not decide in the first instance whether a particular number of jobs existing in the state or national economy is significant because it involves fact-finding, which is within the ALJ's province.[15] Although the Tenth Circuit has some conflicting opinions on the application of the harmless error principle as to whether a certain number of jobs existing in the national economy is significant,[16] there is no indication that the Tenth Circuit has ever applied harmless error, and found on its own, that 100,000 jobs in the national economy is a significant number. In this case, the ALJ did not make the finding that a job with 100,000 positions in the national economy is a significant number. Instead, he made the finding that three

---

[15] *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) ("This court has made it clear that judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation . . . .'") (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992))); *see also Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006) (declining to affirm, in part, the district court's harmless error conclusion that two other jobs existed in significant numbers because the ALJ may have "to give consideration to the factors that should direct an ALJ's resolution of the significant number inquiry.").

[16] *See Norris*, 197 F. App'x at 777 (determining that 210,000 jobs in the national economy was a relatively small number and thus the ALJ may need to make factual findings relative to whether these jobs existed in a significant number). *But see Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (noting that harmless error is "seldom used to supply a missing dispositive finding in a situation" but nevertheless determining that a significant number of jobs existed when there were 11,000 regionally and 152,000 nationally).

jobs, with approximately 270,000 positions, existed in significant numbers for Plaintiff.  The Court declines to apply the harmless error standard here and find on its own that one job with 100,000 positions in the national economy is a significant number for the purpose of Plaintiff finding employment with his disability.  This factual finding is better left to the ALJ. Accordingly, this error requires reversal and remand to the ALJ.

Although the Court has already found error requiring remand to the ALJ, the Court will briefly address Plaintiff's contentions of error as to the ALJ's treatment of the other providers' opinions.  In general, the ALJ found that Plaintiff's treating psychiatrist's opinion and Plaintiff's licensed specialized social worker's opinion were not persuasive.  The ALJ found that the consultative examiner's opinion was persuasive with one exception regarding Plaintiff's ability to consistently follow simple instructions.  One reason he noted for finding Plaintiff's treating physicians' opinions and the consultative examiner's opinion unpersuasive is that they were inconsistent with Plaintiff's wide range of daily activities, which included driving, caring for his elderly mother, and managing household finances.

Dr. Samuelson, Plaintiff's treating psychiatrist, found that Plaintiff's severe mood symptoms impaired his ability to persist on tasks and follow through on work procedures.  He also opined that Plaintiff's performance on routine, repetitive tasks; his ability to exercise acceptable judgment; respond to time limits; and sustain attention would be unreliable on a regular and continuing basis.  Ultimately, Plaintiff's psychiatrist found that Plaintiff would be unable to work on a regular and continuing basis.  In addition, Snyder, a licensed specialized clinical social worker, opined that Plaintiff was incapable of maintaining even part-time employment.

The ALJ rejected both opinions as unpersuasive because the ALJ believed that Dr. Samuelson's treatment notes showed normal memory, intact attention, and adequate concentration.[17]  The ALJ rejected Snyder's opinion because the determination of whether Plaintiff is "disabled" is a finding left to the ALJ, citing to 20 C.F.R. § 404.1527(d).[18]  In addition, the ALJ found that Dr. Samuelson's and Snyder's opinions were inconsistent with Plaintiff's daily activities of driving and managing household finances.

Dr. Neufeld was hired after the hearing at the ALJ's request.  He opined that Plaintiff had slow processing speed and had the capacity to engage in at least 3-4 step instructions, but he stated that Plaintiff's ability to maintain adequate pace with even 1-2 step instructions over a 40-hour workweek was questionable.  The ALJ found Dr. Neufeld's opinion persuasive and adopted many of the limitations.  However, the ALJ rejected Dr. Neufeld's limitation that would preclude Plaintiff from working.  Instead, the ALJ again found that this limitation did not comport with Plaintiff's wide range of daily living activities, including household chores, driving, and managing the household finances.

Plaintiff points out that Dr. Neufeld's opinion that Plaintiff was limited in his ability to carry out detailed instructions and reliably or consistently perform tasks is consistent with Plaintiff's treating psychiatrist's opinion and social worker's opinion that Plaintiff did not have the capacity to work a 40-hour workweek.  Indeed, as noted above, all physicians found that

---

[17] The ALJ also took issue with Plaintiff's conservative treatment history noting that it was inconsistent with Plaintiff's limitations.  Plaintiff's point that there is no surgery to correct dementia or neurocognitive disorders resulting in impaired processing speed is well-taken.  In addition, it appears that Plaintiff was admitted to the hospital several times following a suicide attempt and depression.  Thus, Plaintiff's "conservative" treatment history does not seem to be much of a factor for discounting Plaintiff's treating psychiatrist's findings.

[18] Plaintiff points out that the ALJ referenced the wrong regulation, 20 C.F.R. § 404.1527, when discussing how to evaluate Snyder's opinion.  This regulation only applies to cases filed prior to March 27, 2017, and this case was filed in 2018.  It does not appear that this erroneous citation had any effect on the ALJ's weighing of the opinion evidence.

Plaintiff was limited to simple instructions.  And three of the five physicians opined that it was doubtful that Plaintiff could work a full week of work because he could not maintain pace or follow through with directions without issues.  The ALJ's emphasis on Plaintiff's ability to perform household tasks—such as driving and managing the household finances—to discount all opinions regarding Plaintiff's ability to stay on task, follow instructions, and perform during a 40-hour workweek is problematic.  "[T]he Tenth Circuit has long held that the sporadic performance of minimal activities does not establish that a claimant is able to work."[19] Performing several daily activities hardly seems indicative of the ability to follow instructions and stay on task during a 40-hour workweek.

In sum, it appears that the physician's opinions in this case were consistent with each other that Plaintiff was unable to follow detailed instructions and that he was limited in his ability to maintain pace throughout a 40-hour workweek.  Because these opinions were consistent with each other, they may carry more weight.[20]  "The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability."[21]  On remand, the ALJ should review whether substantial evidence supports the RFC and whether Plaintiff's daily activities are indicative of his ability to work a full workweek.

---

[19] *Farmer v. Astrue*, No. 10-2386-JWL, 2011 WL 1434663, at *8 (D. Kan. Apr. 14, 2011) (citations omitted); *see also Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) ("[S]poradic performance [in daily living activities] does not establish that a person is capable of engaging in substantial gainful activity.").

[20] *See* 20 C.F.R. § 404.1520c(c)(2) (noting that "the more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").

[21] *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (citation omitted).

V.     **Conclusion**

The ALJ's RFC did not include Plaintiff's limited ability to follow work instructions despite finding the state psychologists' opinions persuasive.  The omission of this limitation resulted in the inclusion of more jobs for which Plaintiff was not qualified.  Because only one position remains based on a more limited RFC, the ALJ must consider whether jobs exist in significant numbers in the national economy for Plaintiff.  In addition, the ALJ should review whether Plaintiff's daily activities are substantial evidence supporting Plaintiff's RFC.

In some cases, an immediate award of benefits is appropriate.[22]  Remand, however, is appropriate when additional factfinding is necessary.[23]  Here, the Court finds that the ALJ needs to make a factual determination in the first instance.  Therefore, the Court concludes that it is more appropriate to reverse and remand.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is **reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g)** for further proceedings consistent with this Memorandum and Order.

**IT IS SO ORDERED.**

Dated: October 7, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[22] *See Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988).

[23] *Id.*; *see also Higgins v. Barnhart*, 294 F. Supp. 2d 1206, 1215 (D. Kan. 2003) (citing *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989)).